# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NFS LEASING, INC.,            ) | |
|                               ) | |
| Plaintiff,       ) | |
|                               ) | Case No. |
| v.                            ) | |
|                               ) | |
| SA HOSPITAL ACQUISITION GROUP, LLC,   ) | |
| AMERICAN HEALTHCARE SYSTEMS, LLC,     ) | |
| and AMERICAN HEALTHCARE SYSTEMS       ) | |
| MISSOURI, LLC,                ) | |
|                               ) | |
|                               ) | |
| Defendants.      ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
PREJUDGMENT WRIT OF ATTACHMENT
AS AGAINST DEFENDANT SA HOSPITAL ACQUISITION GROUP, LLC**

Plaintiff, NFS Leasing, Inc. ("NFS"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 64, Missouri Rule of Civil Procedure 85 and Missouri Revised Statute § 521.010 *et seq.*, submits this memorandum of law in support of its Motion for Prejudgment Writ of Attachment against Defendant SA Hospital Acquisition Group, LLC ("SA Hospital").

This case arises out of SA Hospital's repeated failure to comply with its obligations under its equipment lease agreement with NFS for more than six months. A writ of prejudgment attachment against SA Hospital is appropriate and necessary because SA Hospital owes NFS at least $1,673,891.88 (exclusive of the fair market value of the Leased Equipment: $2,113,599) and is actively and unlawfully attempting to convey all of its assets (including NFS's collateral and ostensibly NFS's personal property) to other entities. SA Hospital, which operates at 3933 S Broadway, St. Louis, Missouri 63118, leased medical equipment from NFS in exchange for monthly payments of $86,736.10 (exclusive of taxes), but irrevocably defaulted under the lease in

September 2022.  Despite SA Hospital's irrevocable default, it (i) continues to possess and use NFS's property; (ii) has refused to make any payments for the continued possession and use of NFS's property (totaling $482,694.55 in past due payments for six months); and (iii) has denied NFS its legal and contractual rights to recover its property, all while SA Hospital profits from and diminishes the value of NFS's property.

To add insult to injury, SA Hospital has entered into an asset purchase agreement and ceded control of its operations to an unaffiliated organization, American Healthcare Systems.  That buyer entity operates multiple medical facilities in North Carolina and has made repeated misrepresentations concerning payments and NFS's ownership of the leased property.  American Healthcare Systems's current control over SA Hospital and the asset purchase, which is pending closing, creates a significant risk that NFS's leased equipment and collateral may be conveyed or moved out of NFS's reach.  Further, SA Hospital, after defaulting under the NFS equipment lease, appears to have granted American Healthcare Systems a lien on its "tangible personal property," which improperly conflicts with NFS's perfected security interest in collateral and breaches the Security Agreement between SA Hospital and NFS.

NFS seeks only attachment of what it is already entitled to: (i) the leased equipment it owns that SA Hospital is purporting to control, own, and/or sell, and (ii) the collateral it was granted by SA Hospital, which SA Hospital then permitted American Healthcare Systems to file a lien on in breach of the preexisting Security Agreement with NFS and the NFS UCC-1 filings.  Without immediate protection, SA Hospital will succeed in transferring all of its assets, including NFS's collateral, and improperly conveying or moving NFS's leased equipment out of its reach.     With its property converted and its collateral purportedly sold and/or encumbered, NFS will be left with its only recourse against an empty shell that will be SA Hospital. To protect NFS from SA

Hospital's continued wrongful conduct, the Court should issue prejudgment attachment in the amount of $2,113,599 (the fair market value of the leased equipment wrongfully in use by SA Hospital) covering both NFS's leased equipment and collateral, identified as any non-leased equipment owned by SA Hospital.

I. **FACTS**

A. **The Agreements Between NFS and SA Hospital**

On April 26, 2021, SA Hospital and NFS executed the Master Equipment Lease No. 2021-0233 (the "Master Lease" and together with Schedule 1 and all amendments and modifications thereto, the "Lease Agreement") identifying specific terms and equipment to be leased by SA Hospital (the "Leased Equipment"). **Exhibit 1** to Plaintiff's Affidavit in Support ("Affidavit"). (Aff. at ¶ 1).[1] The Leased Equipment consists of certain personal property owned by NFS, including medical devices and implements, used in a healthcare setting. **Exhibit 1**, Schedule 1C. (Aff. ¶ 5). NFS estimates that the fair market value of the Leased Equipment is $2,113,599. **Exhibit 2**. (Aff. ¶ 6).

On March 26, 2021, NFS filed a UCC-1 financing statement governing the Leased Equipment (the "Leased Equipment UCC-1") in Delaware, SA Hospital's state of formation, to protect NFS's interests in the Leased Equipment and provide public notice that the Leased Equipment is NFS's property and not SA Hospital's property. **Exhibit 3**. (Aff. ¶ 9). On April 26, 2021, in consideration of and inducement to NFS entering into the Lease Agreement, SA Hospital executed a Security Agreement, granting NFS a security interest in SA Hospital's "Equipment", as that term is defined under Article 9 of the Massachusetts Uniform Commercial Code (the "Collateral"). **Exhibit 4**. (Aff. ¶ 10). On March 25, 2021, NFS filed a UCC-1 financing statement

---

[1] All exhibit cites are to the numbered Exhibits submitted in support of the Affidavit.

3

(the "Collateral UCC-1") in Delaware, SA Hospital's state of formation, perfecting its security interest pursuant to the Security Agreement. **Exhibit 5**. (Aff. ¶ 14).

On April 30, 2021, NFS, SA Hospital, and SA Hospital's lessor under a ground lease, PI Broadway LLC (the "Landlord"), entered into a Tri-Party Landlord Agreement (the "Landlord Agreement"), whereby SA Hospital and Landlord each acknowledged the NFS Lease Agreement, NFS's ownership of the Leased Equipment, and the stated purpose of the Landlord Agreement in providing "for NFS to gain access to the Leased Equipment in the event Lessee defaults under the Equipment Lease and NFS exercises its rights thereunder to repossess the Leased Equipment." **Exhibit 6**. (Aff. ¶ 15).

### B.  SA Hospital's Irrevocable Default Under the Lease Agreement

In September 2022, SA Hospital defaulted on its obligations by failing to make payment of $86,736.10, exclusive of sales and use and personal property tax, required by the Lease Agreement.  (Aff. ¶ 18).

On November 3, 2022, NFS sent SA Hospital a notice of default (the "Default Notice"). **Exhibit 7**. (Aff. ¶ 19). The Default Notice further demanded that SA Hospital assemble and make arrangements to allow for NFS to pick up the Leased Equipment. **Exhibit 7**. (Aff. ¶ 21). SA Hospital failed to cure the monetary default within the time prescribed in the Lease Agreement and Default Notice, and the default became irrevocable five days later. (Aff. ¶ 22).

On November 22, 2022, NFS sent a notice to Landlord certifying SA Hospital's default (the "Landlord Notice") and requesting access to the premises to assess removal of the Leased Equipment on November 28, 2022. **Exhibit 8**. (Aff. ¶ 23).

### C. SA Hospital is Actively Attempting to Sell the Leased Equipment and Collateral of NFS to the AHS Parties.

In or about May 2022, SA Hospital entered into an asset purchase agreement with American Healthcare Systems, LLC ("AHS LLC") and/or American Healthcare Systems Missouri, LLC ("AHS MO"; together, the "AHS Parties") and the AHS Parties began controlling and operating SA Hospital. **Exhibit 9**. (Aff. ¶¶ 24, 25). From June 2022 through the present, the AHS Parties list SA Hospital as one of the AHS Parties' locations on their website. (Aff. ¶ 37).[2]

On August 17, 2022, Lawrence Feigen of SA Hospital advised NFS that "Mr. Mike Sarian, principal of AHS" will be making monthly payments to NFS for the Leased Equipment on behalf of SA Hospital moving forward. **Exhibit 10** (Feigen Email 8/17, 2:11 pm). (Aff. ¶ 33).

On October 24, 2022, AHS MO filed a UCC-1 financing statement in Delaware, SA Hospital's state of formation, claiming a security interest in all tangible personal property of SA Hospital, including the Collateral and, upon information belief, purports to grant a security interest in the Leased Equipment (which cannot be granted because it is NFS's property). These actions violate NFS's ownership rights in the Leased Equipment which belongs to NFS and further breach the Lease Agreement and the Security Agreement. **Exhibit 11**. (Aff. ¶ 34). In emails, agents of the AHS Parties have represented that SA Hospital and the AHS Parties have not closed on the asset purchase agreement and, since at least December 2022, SA Hospital has been attempting to sell its assets to entities other than the AHS Parties. *See* **Exhibit 9** (12/30, at 12:09 pm). (Aff. ¶ 35).

Upon information and belief, the terms of the asset purchase agreement include the sale of the Collateral and the purported sale of the Leased Equipment; however, SA Hospital does not have the right to sell the Leased Equipment because it is the property of NFS. (Aff. ¶ 36).

---

[2] As of today, the AHS parties continue to list SA Hospital d/b/a South City Hospital as one of their "Locations" on their website: https://www.amhealthsystems.com/locations/south-city-hospital/

5

### D. SA Hospital and the AHS Parties refuse to pay for or return the Leased Equipment and Collateral of NFS.

On November 4, 2022, Jeff Alholm of SA Hospital advised NFS: "Our plan and expectation remain that either: NFS is paid off at the closing of the sale of the hospital business operations, or subject to the required approvals, the NFS outstanding balance and monthly payments are assumed by the new owner of the hospital business operations." **Exhibit 12** (Alholm Email 11/4, 5:42 pm). (Aff. ¶ 39).

On November 7, 2022, NFS notified SA Hospital that it may proceed with legal action if payment was not made as had been promised. **Exhibit 12** (Calumby Email 11/7, 12:39 pm). (Aff. ¶ 40). Jeff Alholm of SA Hospital responded that "you still can expect a complete response today to your prior email to resolve the matter." **Exhibit 12** (Alholm Email 11/7, 3:54 pm). (Aff. ¶ 41). On November 17, 2022, Ben Klein of SA Hospital inquired whether the payment issue was resolved and was advised: "No this has not been resolved. NFS has not received the wire that was said to be sent (several times) nor have we received a wire confirmation." **Exhibit 12** (Calumby Email 11/17, 1:59 pm) (Aff. ¶ 42).

In December 2022, the AHS Parties negotiated with NFS to enter into a new lease agreement governing the Leased Equipment because of SA Hospital's default. *See* **Exhibit 9** (12/28, 10:11 am). (Aff. ¶ 43). On December 28, 2022, the AHS Parties advised NFS via text messages that they would sign and return the new lease documents, and that the AHS Parties would make an initial wire payment that day. *See* **Exhibit 9** (Calumby Email 12/28, 12:11 pm). (Aff. ¶ 44). The AHS Parties did not execute the new lease documents and did not make a wire payment to NFS that day as promised. *See* **Exhibit 9** (Calumby Email 12/30, 11:24 am). (Aff. ¶ 45). On December 30, 2022, the AHS Parties stated that, although they had purchased the assets of SA Hospital through an asset purchase agreement, they had not closed on the sale, and that SA Hospital

6

was actively seeking to sell its assets to a new buyer other than the AHS Parties. **Exhibit 9** (Gill Email 12/30, 12:09 pm). (Aff. ¶ 46). In response, NFS advised that ". . . without either a signed lease or the continued (and brought current) monthly rental payments for the continued use, NFS will need to begin to enforce our remedies under the Master Lease Agreement which would include the pickup and disposal of the equipment starting as early as next week [January 3, 2023]." **Exhibit 9** (Calumby Email 12/30, 11:24 am). (Aff. ¶ 47).

Between January 3, 2023, and January 19, 2023, the AHS Parties ignored all communications from NFS concerning payment for SA Hospital's continued use of the Leased Equipment and negotiation of the new lease. *See* **Exhibit 9** (1/3-1/19 Calumby emails). (Aff. ¶ 48). On January 20, 2023, Sarian, the Chairman and CEO of the AHS Parties, agreed by phone to make a wire payment by close of business on Monday, January 23, 2023. *See* **Exhibit 9** (Calumby Email 1/23 3:09 pm). (Aff. ¶ 49). The AHS Parties did not make a wire payment on Monday, January 23, 2023. *See* **Exhibit 9** (Gill Email 1/23, 9:17 pm). (Aff. ¶ 50). The AHS Parties then promised to make a wire payment the morning of Tuesday, January 24, 2023. **Exhibit 9** (Gill Email 1/23, 9:17 pm). (Aff. ¶ 51). On Tuesday, January 24, 2023, NFS inquired whether the AHS Parties had initiated the wire payment. *See* **Exhibit 9** (Calumby Email 1/24, 12:58 pm). (Aff. ¶ 52). The AHS Parties stated that they had made a wire payment to NFS. *See* **Exhibit 9** (Gill Email 1/24, 4:01 pm). (Aff. ¶ 53). However, the AHS Parties did not make a wire payment to NFS on Tuesday, January 24, 2023. *See* **Exhibit 9** (Calumby Email 1/25, 12:24 pm). (Aff. ¶ 54).

On January 25, 2023, NFS inquired about why the AHS Parties had not made the wire payment as promised and the AHS Parties advised that there was a hold on their bank account. **Exhibit 9** (Calumby Email 1/25, 12:24 pm; Gill Email 1/25 3:35 pm). (Aff. ¶ 55). The AHS Parties never made the wire payment. *See* **Exhibit 9** (Calumby Email 1/26, 8:55 am). (Aff. ¶ 56). On

Monday, January 30, 2023, NFS notified the AHS Parties of its intent to proceed with legal action to recover the Leased Equipment from SA Hospital. *See* **Exhibit 9** (Calumby Email, 1/30, 1:30 pm). (Aff. ¶ 57).

Further, upon information and belief, a creditor of SA Hospital and/or the AHS Parties has obtained a judgment against one or both of those entities concerning SA Hospital's operations and/or debts. *See* **Exhibit 9** (Gill Email 1/26, 1:05 pm). (Aff. ¶ 58).

### E. SA Hospital and the AHS Parties refuse to make payments or return the Leased Equipment and the AHS Parties remain in control of the Leased Equipment and Collateral.

On January 10, 2023, an agent of NFS visited the SA Hospital premises to inspect and inventory the Leased Equipment, but was denied access. **Exhibit 13**. (Aff. ¶ 59). On January 20, 2023, NFS wrote to the Landlord, advising of the breach of the Landlord Agreement and demanding access to inspect the Leased Equipment and prepare for its removal. **Exhibit 14**. (Aff. ¶ 60). NFS subsequently learned that, after executing the Landlord Agreement with NFS, the Landlord had sold the property to a different entity, Twain GL XXV, LLC ("Twain"), by Special Warranty Deed, dated December 21, 2021, and sold the improvements on the property to SA Hospital Real Estate Holdings, LLC ("SA Hospital Holdings"), by Special Warranty Deed, dated December 21, 2021.  Contemporaneous with the sales, Twain and SA Hospital Holdings entered into a ninety-nine year ground lease, evidenced by the Memorandum of Lease, dated December 22, 2021. (Aff. ¶ 61).

On January 25, 2023, NFS wrote to Twain, advising of SA Hospital's default and requesting access to inspect and prepare for the removal of the Leased Equipment. **Exhibit 15**. (Aff. ¶ 63). On January 26, 2023, NFS wrote to SA Hospital Holdings, advising of SA Hospital's default and requesting access to inspect and prepare for the removal of the Leased Equipment.

**Exhibit 16**. (Aff. ¶ 64). On February 1, 2023, NFS wrote to all parties, including SA Hospital, SA Hospital Holdings, the AHS Parties, and Twain, advising that it had received no response concerning access to the Leased Equipment and it would therefore file suit to recover the Leased Equipment if no response was received by Friday, February 3, 2023. **Exhibit 17** (2/1 Barker Email 12:58 pm). (Aff. ¶ 65).

On February 3, 2023, the AHS Parties wrote to NFS stating that the AHS Parties (i) "are trying to resolve this issue with NFS," (ii) will proceed under the new lease agreement in principle reached with NFS, and (iii) "can wire the money on Monday." **Exhibit 17** (Gill Email 2/3 5:21 pm). (Aff. ¶ 66). On February 4, 2023, NFS accepted the offer, provided that it received the wire payment of $121,448.04, representing the January and February lease payments which were to be made by the AHS Parties, by the close of business on Monday, February 6, 2023. **Exhibit 17** (Barker Email 2/4 6:03 pm). (Aff. ¶ 67). On February 6, 2023, NFS advised the AHS Parties that it had not received the wire payment and requested that AHS LLC's registered agent, Faisal Gill, accept service of the instant lawsuit as the registered agent for AHS LLC. **Exhibit 17** (Barker Email 2/6 2:42 pm). (Aff. ¶ 68). On February 7, 2023, Gill responded: "I do not have any authority to accept service for SA Acquisition Group, which is the entity your contract is with. American Healthcare is not a party and until we close and has not assumed any responsibility for your loan." **Exhibit 17** (Barker Email 2/7 1:14 am). (Aff. ¶ 69).

To date, the AHS Parties and SA Hospital continue to possess and use the Leased Equipment and Collateral, have not paid the back-owed outstanding balance to NFS of $482,694.55, and continue to ignore NFS's demands for payment or access to the Leased Equipment. **Exhibit 17**. (Aff. ¶ 70).

9

## II. LEGAL STANDARD

Rule 64 of the Federal Rules of Civil Procedure provides, in substance, that the remedies by attachment under state law are available in federal court. Fed. R. Civ. P 64. Thus, this Court is authorized to issue an *ex parte* order of prejudgment attachment under Missouri law. *See* Fed. R. Civ. P. 64(a), (b).

Under Missouri law, a plaintiff in a civil action "may, at any time pending the suit and before final judgment, sue out an attachment in such action, on filing an affidavit and bond." Mo. Rev. Stat. § 521.130; *accord* Mo. Sup. Ct. Rule 85.02 ("After the commencement of a civil action a party who presents therein a claim by petition . . . may obtain a writ of attachment upon compliance with this Rule 85.").

In relevant part, Mo. Rev. Stat. 512.010 states that a prejudgment writ of attachment is appropriate if any one of the following conditions are met:

 a. Where the defendant is not a resident of this state (521.010 (1));

 b. Where the defendant is about fraudulently to convey or assign his property or effects, so as to hinder or delay his creditors (521.010 (9)); or

 c. Where the defendant is about fraudulently to conceal, remove or dispose of his property or effects, so as to hinder or delay his creditors (521.010 (10)).

Mo. Rev. Stat. § 521.010 *et. seq.; see also Indep. Elec. Supply Inc. v. MC Power Companies, Inc.*, No. 4:22-CV-00304-RK, 2022 WL 2079714, at *1 (W.D. Mo. June 9, 2022) (applying Fed. R. Civ. P 64, Mo. Rev. Stat. § 521.130 and Mo. Sup. Ct. Rule 85); *see also Alberger v. White,* 23 S.W. 92, 95 (Mo. 1893); *Hunter v. Roberts*, 267 S.W. 2d 368, 372 (Mo. Ct. App. 1954) (noting that fraud is discerned from surrounding circumstances).

## III. ARGUMENT

NFS is entitled to a Writ of Attachment on the Leased Equipment and the Collateral at SA Hospital's location, 3933 S Broadway, St. Louis, Missouri 63118, in the amount of at least $2,113,599 (the fair market value of the Leased Equipment) because SA Hospital is actively seeking to convey <u>all of the personal property and security of NFS</u> to one or more potential buyers, including under an asset purchase agreement with an entity that has demonstrated flagrant disregard of NFS's property and contractual rights – the AHS Parties.  Further, SA Hospital has completely ignored and repeatedly breached its obligations under all of its agreements with NFS: the Lease Agreement, the Security Agreement, and the Landlord Agreement.  Given this sustained pattern of conduct for over six months, there is a significant risk that NFS's property will be conveyed, damaged, or moved out if its reach, leaving it with millions of dollars in losses and none of its bargained-for recourse or leased equipment.  Having refused payment and return of NFS's property for more than six months, SA Hospital's conduct has hindered and delayed NFS. Further, SA Hospital is an out of state defendant because it is a Delaware limited liability company and none of its members are residents of Missouri. Attachment should issue based on application of any one of the three statutory grounds identified above to the present circumstances.

> **A. Under Missouri law and Rule 64 of the Federal Rules of Civil Procedure, NFS is entitled to prejudgment attachment of the Leased Equipment and Collateral.**

NFS is entitled to prejudgment attachment because SA Hospital has breached each of the three agreements with NFS and because: (1) SA Hospital has or is in the process of selling all of its assets, including the Collateral, and purporting to sell the Leased Equipment to the AHS Parties (which it cannot do because NFS owns the Leased Equipment); (2) SA Hospital permitted the AHS Parties to record a lien on the Collateral of NFS in breach of the Security Agreement and

11

purported to grant a lien on the Leased Equipment (which it cannot do because NFS owns the Leased Equipment); and (3) SA Hospital's refusal to return the Leased Equipment to NFS in conjunction with its asset sale and relinquishment of control over SA Hospital's operations to the AHS Parties creates a serious risk of damage, loss, and removal of NFS's Collateral and Leased Equipment. Despite NFS's good faith efforts to work with SA Hospital and the AHS Parties following the September 2022 default, both entities have either ignored NFS's demands for payment or promised to make payment and then refused.  Further, SA Hospital and the AHS Parties have, <u>for six months</u>, exercised absolute control over and acted against NFS's property and contractual rights, effectively claiming and using the Leased Equipment as their own property.[3] Accordingly, while SA Hospital and the AHS Parties continue to profit from its use, NFS's Leased Equipment and Collateral continue to diminish in value and are in danger of being fraudulently moved or sold.

Missouri Revised Statutes 521.010, in relevant part and applicable here via Federal Rule of Civil Procedure 64, permits a Plaintiff to obtain a prejudgment attachment when (1) the defendant is an out-of-state resident; (2) when defendant is preparing to fraudulently convey the property at issue; or (3) when the defendant is preparing to fraudulently "conceal, remove, or dispose" of the property at issue. Mo. Rev. Stat. 521.010 (1), (9), (10). The Court need only find that one of the foregoing statutory grounds exists to issue prejudgment attachment. *Id.*

> **i. The asset purchase agreement and financing statement of the AHS Parties constitute impending or actual fraudulent conveyances under <u>521.010 (9) and 521.010 (10).</u>**

The Court may issue prejudgment attachment under either 521.010(9) or 521.010(10) because SA Hospital either (i) "is about fraudulently to convey or assign his property or effects"

---

[3] Each of SA Hospital and the AHS Parties have promised and failed (or misrepresented) that they would make lease payments to NFS on multiple occasions over the course of three months. *See* **Exhibits 9, 12**. (Aff. ¶¶ 39 – 56).

12

or (ii) "is about fraudulently to conceal, remove or dispose of his property or effects", both with the intent to hinder or delay NFS as creditor.  The asset purchase agreement between SA Hospital and the AHS Parties, which remains pending closing, and the lien granted to the AHS Parties in October 2022 constitute fraudulent conveyances that ostensibly deprive NFS of its own property, its bargained-for Collateral, and its ability to recover at least $1,673,891.88 in Lease Agreement damages from SA Hospital, which may become an empty shell as soon as tomorrow.  NFS owns the Leased Equipment under the Lease Agreement's plain language. **Exhibit 1**. (Aff. ¶ 1).  NFS perfected its security interest in the Collateral pursuant to the Security Agreement. **Exhibit 3**. (Aff. ¶ 9).  SA Hospital irrevocably defaulted under the Lease Agreement (and the Security Agreement and the Landlord Agreement). **Exhibit 7**. NFS is contractually and legally entitled to the immediate possession of the Leased Equipment and Collateral. *See* **Exhibit 4**, p. 6 ("Debtor understands and agrees Secured Party may exercise its rights hereunder without affording Debtor an opportunity for a preseizure hearing before Secured Party, through judicial process or otherwise, takes possession of the Collateral upon the occurrence of an Event of Default, and Debtor expressly waives its constitutional right, if any, to such prior hearing.").[4]

Despite these facts, SA Hospital has improperly attempted to assert control and ownership over the Leased Equipment by refusing to make payments or return it, and, upon information and belief, by attempting to convey the Leased Equipment and the Collateral under the asset purchase agreement with the AHS Parties.  (Aff. ¶¶ 18, 24 – 25). Although the Lease Agreement expressly states that the Leased Equipment is the property of NFS, it appears that SA Hospital and/or the

---

[4] Upon default, NFS may require SA Hospital to assemble the Leased Equipment for pickup by NFS and/or for NFS to obtain possession of the Leased Equipment by summary proceeding or otherwise. **Exhibit 1**, ¶10. "Each of the Lessee and Landlord hereby agrees that in the event of default declared by NFS under the Equipment Lease [between NFS and Lessee] . . . the Landlord is hereby authorized and directed, at NFS' option, to allow NFS or its designated agents to . . .  remove the Leased Equipment and/or Collateral from the Premises . . . after NFS provides notice to Landlord of the Default. . . . Landlord further agrees that Landlord will not hinder NFS' actions in repossessing the Leased Equipment or exercising its rights with respect to the Collateral." **Exhibit 6**, ¶3.

13

AHS Parties either do not care or are taking the position that the lease is not a lease. Likewise, SA Hospital has permitted the AHS Parties to record a lien on SA Hospital's tangible personal property, which clearly conflicts with the NFS security interest in SA Hospital's non-leased equipment. (Aff. ¶ 58). In six months, SA Hospital has refused to make any payment, now totaling $482,694.55 in arrears, has continued to use and diminish the value of the Leased Equipment, and has refused to return that property owned by NFS to NFS.

To make matters worse, the AHS Parties have been controlling and operating SA Hospital for nine months and have repeatedly misrepresented that they would make lease payments and enter into a new lease with NFS. *See* **Exhibit 9**. (Aff. ¶¶ 48 – 55). Given their pattern of conduct and that they operate multiple healthcare facilities in North Carolina and no other facilities in Missouri, there is a significant risk that the AHS Parties will continue to disregard NFS's ownership and rights and move the Leased Equipment and Collateral out of state. Because NFS provided public notice of its ownership of the Leased Equipment by filing the Leased Equipment UCC-1 and its security interest in the other personal property of SA Hospital by filing the Collateral UCC-1, any purported conveyance of SA Hospital's equipment is fraudulent and acts to hinder and delay NFS.

### ii. SA Hospital and the AHS Parties are not residents of Missouri under 521.010 (1).

The Court may issue a prejudgment attachment because "the Defendant is not a resident of this state", which is an independently sufficient ground under 521.010(1). SA Hospital is a Delaware limited liability company with four members, three of whom reside in California and one in New Jersey. Accordingly, SA Hospital is not a resident of Missouri.

Likewise, the AHS Parties are not residents of Missouri because both are limited liability companies whose member is not a resident of Missouri. That each entity and individual with an

14

interest in owning, operating, or controlling the premises where the Leased Equipment and Collateral is located is not a resident of Missouri highlights the increased risk of concealment, removal, or disposition under 521.010(10).

> **B. NFS has complied with Missouri's procedural requirements for issuance of a writ of prejudgment attachment.**

Pursuant to Missouri Rules of Civil Procedure 85.03, a plaintiff-claimant must file an affidavit stating the nature and amount of its claim and the existence of one or more grounds set forth above at paragraph 11 and thereafter, the court <u>shall</u> issue the attachment pursuant to Rule 85.04.  NFS's Rule 82.03 affidavit is attached to Plaintiff's Motion as **Exhibit B**. Also pursuant to Rule 85.08, NFS is prepared to file a bond in the amount set by this Court.

If Defendants can demonstrate exigent grounds, Defendants may be able to regain the Leased Equipment or Collateral pursuant to the provisions of Chapter 521 of the Missouri Revised Statutes.

A proposed Order is attached to Plaintiff's Motion as **Exhibit C.**

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's Motion for Prejudgment Writ of Attachment.

Dated: February 20, 2023

15

Respectfully submitted,

**GREENSFELDER, HEMKER & GALE, P.C.**


By: */s/ Randall F. Scherck*
      Randall F. Scherck, #31085MO
      10 South Broadway, Suite 2000
      St. Louis, Missouri  63102
      (314) 241-9090 (Telephone)
      (314) 241-8624 (Facsimile)
      rscherck@greensfelder.com


*Attorney for Plaintiff NFS Leasing, Inc.*