**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| NFS LEASING, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 4:23-CV-00203-AGF |
| | ) |
| SA HOSPITAL ACQUISITION | ) |
| GROUP, LLC, ET AL., | ) |
| | ) |
|     Defendants. | ) |

**MOTION HEARING**
**BEFORE THE HONORABLE AUDREY G. FLEISSIG**
**UNITED STATES DISTRICT JUDGE**

**FEBRUARY 28, 2023**

APPEARANCES:

For Plaintiff:                 Randall F. Scherck, Esq. (by video)
*NFS Leasing, Inc.*            Kiran Jeevanjee, Esq. (by video)
                               GREENSFELDER HEMKER PC
                               10 S. Broadway, Suite 2000
                               St. Louis, MO 63102

For Defendant:                 David P. Stoeberl, Esq. (by video)
*American Healthcare*          Thomas H. Riske, Esq. (by video)
*Systems Missouri, LLC*        CARMODY MACDONALD, PC
                               120 S. Central Avenue, Suite 1800
                               St. Louis, MO 63105

For Defendant:                 Mayer S. Klein, Esq. (by video)
*SA Hospital Acquisition*      FRANKEL RUBIN, PC
*Group*                        231 S. Bemiston Avenue, Suite 1111
                               Clayton, MO 63105

REPORTED BY:   CARLA M. KLAUSTERMEIER, RMR, CRR, CSR, CRC, CCR
               Official Court Reporter
               United States District Court
               111 South Tenth Street
               St. Louis, MO 63102 | (314)244-7984

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1              **(The proceedings commenced at 10:00 a.m.)**

2         **THE COURT:**  Good morning.  We are here in the matter

3    of NFS Leasing, Inc., v. SA Hospital Acquisition Group, LLC,

4    American Healthcare Systems, LLC, and American Healthcare

5    Systems Missouri, LLC.  It is Case No. 4:23-CV-203-AGF.

6              This matter is before the Court on Plaintiff

7    NFS Leasing, Inc.'s motion for a prejudgment writ of

8    attachment against Defendant SA Hospital Acquisition Group,

9    LLC.

10             And the plaintiff had actually filed this litigation

11   on February the 20th requesting immediate ex parte relief and

12   there were issues with respect to jurisdiction that the Court

13   needed to address and those were addressed in an amended

14   complaint, and so the matter is before us.

15             And why don't you state who is here on behalf of the

16   plaintiff, NFS Leasing.

17        **MR. SCHERCK:**  Good morning, Your Honor.  Randy

18   Scherck, Greensfelder, Hemker & Gale, on behalf of

19   NFS Leasing, Inc., the plaintiff.

20        **MS. JEEVANJEE:**  And Kiran Jeevanjee also for

21   Greensfelder, Hemker & Gale on behalf of Plaintiff.

22        **THE COURT:**  All right.  And as I stated, the

23   plaintiff wished to proceed here ex parte.  But the Court was

24   unwilling to do that without providing notice to the

25   defendants and so we did provide notice to the defendants.

1   Although I gather from some of what we have read that the

2   defendants did, in fact, have notice that the lawsuit itself

3   was being filed.  I wished to provide notice to the defendants

4   before we proceeded and not proceed on an ex parte matter,

5   although the Missouri statute does, in fact, provide for

6   ex parte relief.

7               And so we did contact counsel that the plaintiff

8   advised us had been representing these parties, and now that I

9   see that appearances have been filed by the defendants.

10              And why don't you state your appearance on behalf of

11  SA Hospital Acquisition Group.

12              **MR. KLEIN:**  Good morning, Your Honor.  Mayer Klein,

13  Frankel Rubin Klein, on behalf of SA Hospital.

14              **THE COURT:**  All right.  And then on behalf of the

15  two Healthcare Systems, LLC, and Healthcare Systems Missouri,

16  LLC?

17              **MR. STOEBERL:**  Good morning, Your Honor.

18              **MR. RISKE:**  Good morning, Your Honor.  Tom Riske and

19  Dave Stoeberl, of Carmody MacDonald, appearing for American

20  Healthcare Systems Missouri, today, Your Honor.

21              **THE COURT:**  All right.  And I see that entries of

22  appearance have now been filed by those defendants.  And so --

23              **MR. STOEBERL:**  Your Honor, if I -- I'm sorry to

24  interrupt.  But if I may, while we fully expect to be entering

25  for American Healthcare Systems as well, we have just entered

1   for the Missouri entity at this time.  I just -- given the

2   lack of notice and our scrambling to get things together, I've

3   not confirmed that.  I fully suspect that will be the case

4   given the relationship.  I just want to be clear for the

5   record that our appearance, at this time, is limited to

6   American Healthcare Systems Missouri, LLC.

7           **THE COURT:**  And thank you for that correction.  I

8   had not noticed that on your entry of appearance.  And so I

9   will note that.  But I take it, Mr. Riske, you do have

10  communications, however, with American Healthcare Systems,

11  LLC, as well, although you are not in a position to enter an

12  appearance on their behalf?

13          **MR. RISKE:**  That is correct, Your Honor.

14          **THE COURT:**  All right.  And so, as I said, this

15  matter is here on an ex parte request for emergency relief in

16  which the plaintiff is seeking a prejudgment writ of

17  attachment against SA Hospital Acquisition Group, LLC, and

18  essentially wishes to go in and attach and remove the

19  equipment that it has leased to SA Hospital Acquisition Group,

20  LLC.

21          And I gather from everything that was filed in this

22  matter by the plaintiff and the affidavit in support of that

23  acquisition that the parties have been engaging in ongoing

24  discussions with respect to this matter and they have not

25  resulted in any resolution acceptable to the plaintiff at this

```
 1    time and that has brought us to where we are today.

 2            Now, let me ask you.  You know, typically, when

 3    someone is seeking a TRO, I will get all the attorneys on the

 4    phone and we'll talk about it and we'll see if there is some

 5    way to resolve this matter short of the extraordinary relief

 6    that the plaintiff is seeking.  The plaintiff had concerns

 7    about the safety of its equipment here.  And so we have

 8    proceeded in this manner; namely, to set the hearing, advise

 9    defendants of that, and also advise counsel that I was

10    expecting that counsel would advise the defendants that I did

11    not expect there to be any actions taken that might imperil

12    the safety of the collateral and the equipment while we

13    proceeded here today.

14            And so I trust that counsel has adhered to that and

15    that no actions are being taken at this moment to impair the

16    plaintiff's collateral?

17            MR. STOEBERL:  Correct, Your Honor.

18            MR. RISKE:  Yes, Your Honor.  On behalf of the

19    hospital, I can tell you that, 100 percent.

20            THE COURT:  All right.  So let me just ask you all.

21    Would it be at all productive for us to have any discussion

22    off the public record with respect to this matter for a few

23    minutes before we proceed with respect to the formal hearing?

24            MR. KLEIN:  At least on behalf of the hospital, I

25    would say yes.
```

1              **MR. RISKE:**  On behalf of AHS, we would agree,

2    Your Honor.

3              **MR. SCHERCK:**  Well, Your Honor, hearing that is a

4    very optimistic thing to hear.  Because as you've read from

5    the pleadings, we've been trying to get paid, resolve this for

6    now almost seven months.  So --

7              **THE COURT:**  I understand that.

8              **MR. SCHERCK:**  I know.  I know, Your Honor.

9              **THE COURT:**  And I'm not suggesting we will not

10   return to the open record.

11             **MR. SCHERCK:**  No.  I understand that.  I understand

12   that.  I appreciate that.  I also wanted to mention that, on

13   the phone, are two of the -- I believe they're both on the

14   phone -- two of the in-house attorneys for NFS who are --

15             **THE COURT:**  Okay.

16             **MR. SCHERCK:**  -- listening to the call as well.

17   Obviously, this is very, very important to them.

18             But hearing from Mr. Klein and Mr. Stoeberl and

19   Mr. Riske that they have some interest in resolution, we are

20   happy to talk.

21             **THE COURT:**  All right.  And so I just want to give

22   us a few minutes to go that direction and not forgo that

23   direction because, obviously, what we are talking about is

24   extraordinary relief.  And, honestly, I don't even know what

25   kind of volume of equipment this translates to.  I mean, I

1    have seen the list, but I don't know what that means.  And if

2    the plaintiff is actually requesting that the marshals go in

3    and retrieve that property for the plaintiff -- and before we

4    head down that road, I thought it might be worthwhile for us

5    to have just a few minutes of discussion off the public

6    record.

7                Everybody comfortable doing that?

8         **MR. RISKE:**  Yes, Your Honor.

9         **MR. SCHERCK:**  Yes, Your Honor.

10        **MR. KLEIN:**  Yes.  Yes, Judge.  Thank you.

11        **THE COURT:**  All right.  So, Carla, we're going to

12   ask you to stand down for just a minute while we have a

13   discussion off the public record.  Okay?

14        **MR. SCHERCK:**  Your Honor?

15        **THE COURT:**  Yes.

16        **MR. SCHERCK:**  Fair enough.  I was going to -- since

17   my clients are on the phone, certainly, they should

18   participate in this, and I'm going to call them on my cell and

19   bring them in because I assume we're going to do this via the

20   Zoom meeting that we're at to have our discussion?

21        **THE COURT:**  Well, I assume that they can hear us

22   right now.  And if they wanted to discuss something, all they

23   would have to do is unmute.

24        **MR. SCHERCK:**  Okay.  Fair enough.

25        **THE COURT:**  The only person that needs to stand down

1    at this moment is Carla, our court reporter.

2              **MR. SCHERCK:**  Fair enough.

3              **THE COURT:**  She's going to stop making a transcript.

4    Otherwise, we're all going to stay on here and the other

5    people who are on here are simply the brains of the operation,

6    my career law clerk and one of our interns.  All right?

7              **MR. SCHERCK:**  Great.  Thank you, Your Honor.

8              **(A discussion took place off the record.)**

9              **THE COURT:**  All right.  So we have had a discussion

10   off the public record.  And while the parties have discussed

11   certain aspects such as the defendants have -- well, at least

12   Defendant SA Hospital has agreed to promptly permit

13   NFS Leasing to enter the property and inspect the equipment,

14   we have not -- the parties were not able to make any further

15   progress on any issues related to this matter.

16              And so we will proceed here with a hearing on NFS'

17   request for prejudgment attachment in this matter.

18              **MR. SCHERCK:**  I assume I may proceed, Your Honor?

19              **THE COURT:**  You may.

20              **MR. SCHERCK:**  Thank you, Your Honor.  I appreciate

21   that.

22              Your Honor, I know you have read the pleadings.

23              **THE COURT:**  This is Randy Scherck on behalf of the

24   plaintiff.

25              **MR. SCHERCK:**  Yes.  I'm sorry.

1              **THE COURT:**  Please announce yourself.

2              **MR. SCHERCK:**  This is -- yeah, I apologize.  I'm

3    sorry.  Randy Scherck on behalf of the plaintiff,

4    Greensfelder, Hemker & Gale.  Thank you, Your Honor.

5              I am not going to go through the extensive pleadings

6    that we filed.  They speak for theirself.  We filed a motion

7    for prejudgment attachment.  We filed a memorandum in support.

8    We filed a proposed order.  We filed a very, very extensive

9    affidavit which supports our entitlement to the prejudgment

10   attachment.  I'm just going to hit the highlights, if I may,

11   Your Honor, if that would be acceptable.

12             First, NFS Leasing, the plaintiff, is an independent

13   small company of roughly 30 employees in Massachusetts.  As I

14   mentioned earlier, in-house counsel is on the phone.

15             The defendant, SA Hospital, entered into a master

16   lease with a schedule agreement in 2021.  So it's been in

17   effect for almost two years.  Their default occurred on

18   September 1, 2022.  The lease payments were -- the principal

19   balance was approximately $86,000 a month with taxes and so

20   forth, came out to roughly $98,000 a month.  So the total

21   lease payment was just shy of 100,000 a month.  They have not

22   paid it for six months.  The seventh month will be due

23   tomorrow.

24             We have been trying for months and months and

25   months.  We've heard promises after promises which are

 1    outlined in the affidavit.  Unless the Court wants me to go

 2    through some of those, I am not going to do so.  I'm happy to

 3    give some of the highlights.  But months and months and months

 4    with both SA Hospital representatives, and then, subsequently,

 5    when we found out about the involvement of AHS, as a

 6    purchaser/operator of the hospital, they're involvement, we

 7    have been attempting to work out payments.  We have been

 8    attempting to get somebody, if AHS is taking over, to assume

 9    the lease.  We have been promised payments left and right.

10    None of those promises have occurred.  We have received zero

11    dollars.  We have received nothing since September, 2022.

12            That's our -- that's our case.  We have filed a

13    complaint, as the Court is aware, for replevin of the

14    equipment and we're here on the prejudgment attachment for

15    replevin of the equipment.  We have also filed against the AHS

16    entities for conversion because, frankly, according to them,

17    they're operating the hospital and using our equipment.  And

18    also, for unjust enrichment.  We're not before the Court on

19    those issues, but I just wanted to give the Court a little

20    bit, and on the record, a flavor of the lawsuit and where it

21    is.

22            We are -- as Mr. Klein indicated earlier, there's a

23    separate lawsuit for the monetary portion with respect to the

24    lease payments going on in Massachusetts.  Our case here in

25    Missouri is based on recovery of the equipment which we own.

1    Also, to a conversion and unjust enrichment action against the

2    AHS entities.

3            We are also -- and I want this to be clear.  There

4    are two elements to our prejudgment attachment.  One is,

5    of course, the leased equipment which is attached to our

6    documents and outlined.  And we have indicated an estimated

7    value of roughly 2.1 million based on the experience of

8    NFS Leasing valuing the equipment.

9            I think it's important to understand, Your Honor,

10   that this originally was a sale and lease-back.  Apparently,

11   SA Hospital had gone through a bankruptcy.  They needed

12   financing.  They said, we have this equipment, we own all this

13   equipment.  And so they then basically sold it to us and then

14   we leased it back to them.  I believe the original amount of

15   the transaction was roughly 2.5 million.  And the balance at

16   this point is just shy of 1.7 million.  Again, we're not

17   seeking that monetary amount.  But just to give you a flavor

18   of the dollars that are at stake here.

19           We have done everything in our power to try to work

20   this out.  And as I've said, received just no cooperation, no

21   payment, nothing.  We've asked for access to the equipment.

22   It's been denied.  You've seen the e-mail indicating that they

23   wouldn't let us in to see our own equipment.  That tells you

24   that the actions of SA Hospital, and potentially, AHS, are

25   nefarious.  Why would they not let us in to see our own

1    equipment to inventory it?

2           I'm glad to hear that they are going to allow us to

3    do that today.  We had to bring this lawsuit and get before

4    Your Honor on a prejudgment attachment for somebody on their

5    behalf to say, Oh, yes, you can come in and look at and

6    inventory your equipment.

7           The actions have been so time consuming and

8    difficult that we have actually been forced into the position

9    that we're into right now.  And it's unfortunate that we're

10   here today.  We don't want to be here, frankly.  We wanted a

11   deal worked out.  We tried.  It failed.

12          Now, is that a basis to give us a prejudgment

13   attachment?  No.  That's just a little bit of the background

14   so Your Honor, and for the record, understands where things

15   are.  Over six months of going through with representatives of

16   SA Hospital and AHS and trying to get payments, trying to get

17   someone to take responsibility has not done.

18          Now, the standards were prejudgment attachment.  We

19   have cited in our pleadings three of them.  One, where a

20   defendant is not a resident of this state, the record is very

21   clear that -- and by the way, for this action today,

22   Your Honor, it technically, and they're -- they really don't

23   have standing.  They may try to assert it.  But the AHS

24   entities -- this is not directed against them.  Just so the

25   record is clear, this is only directed against SA Hospital

1    because that is, we believe, who is the -- certainly, they're

2    the lessee, and we believe also, is, of course, the owner of

3    the equipment, although we've been told there's a sale

4    transaction.

5           So we have two UCCs that have been filed.  One in

6    our leasing interest and the other one, a general blanket UCC

7    on assets, which under the UCC would be defined as the

8    equipment.  Obviously, we're not interested in the

9    receivables.  We do not have a lien on bank accounts or

10   anything like that.  But on all the equipment.  So not only

11   the equipment that's leased, but any additional

12   assets/equipment that is located at SA Hospital.

13          As I indicated, Defendant is not a resident --

14   SA Hospital is not a resident of the state.  That is one

15   grounds on it, by itself.  That's sufficient.  However, I

16   understand why the Court, and typically, a Court would want

17   more than that.

18          The second ground, where the defendant is about

19   fraudulently to convey or assign his property or effects so as

20   to hinder or delay his creditors.  We have heard and there is,

21   as part of the record, e-mails between my client and AHS, and

22   I believe also involving SA Hospital, in which they have

23   indicated that they have acquired the interest or they're in

24   the process of acquiring.  We don't know at what stage they

25   are of acquiring the hospital.

1              But, that, to take our leased equipment, which we

2    own, and the statute says, 521.010(9), to convey or assign his

3    property or effects so as to -- it says hinder or delay his

4    creditors.  That's exactly the effect that this is having.  If

5    they have -- if they have conveyed or assigned, however

6    they've done it, by a sale transaction, and they've done it

7    two ways.  One, by a sales transaction which may or may not be

8    closed.  Secondly, by granting a lien to AHS.  That is in

9    violation of 521.010.

10             And also, I think it's critical, Your Honor.  It

11   says, where it says the defendant is about.  So it doesn't

12   even have to have occurred yet.  About fraudulently to convey.

13   To be selling the assets of the hospital -- I'm assuming it's

14   an asset purchase agreement, although, of course, I haven't

15   seen it -- which would include our assets that we own, that

16   were leased.  That's a fraud.

17             And Your Honor knows very well that fraud is not

18   something that anybody's going to admit.  It has to be

19   inferred.  By these actions of transferring, having this new

20   entity involved, that is clearly an attempt to delay or hinder

21   NFS Leasing, which is a creditor.  So on that element, we

22   certainly are successful, and we certainly have established

23   that by the series of e-mails.  And, frankly, I think the

24   defendants would even admit that they're engaged in that type

25   of transaction.

1          The third element that we pled -- excuse me, I need

2    to grab a little -- where the defendant is about fraudulently

3    to conceal, remove, or dispose of his property or effects,

4    again, so as to hinder or delay his creditors, 521.010(10).

5    We've heard today for the first time, they're not going to

6    conceal it or hide it from us anymore.  They're going to let

7    us go in.

8          Well, prior to filing this, we are not able to do

9    that.  So just based on the record before you, other than

10   statements of counsel, they have concealed the -- our assets

11   from us by not letting us in there to inventory it.  It

12   appears that that part of the claim/issue may have been

13   resolved.  Remove or dispose of property of effects.  Again,

14   dispose, to me, also means transfer, to sell.  Again, that is

15   what they're doing.  And the keyword also is "about."  The

16   whole concept in my mind, Your Honor -- the whole concept is

17   to protect the, in this case, NFS Leasing, from what is about

18   to happen.

19         Yes, we've heard representations from counsel that

20   they are not going to remove the property.  It's an operating

21   hospital.  But we don't know if that's true.  We haven't been

22   given access to the hospital.  We don't know if employees of

23   the hospital have removed the equipment.  We don't know if

24   other parts of the equipment -- I believe, and I can be

25   corrected if I'm wrong -- there may be some -- as part of the

1    affidavit, there might have been something in there where

2    parts of the equipment, assets, which are subject to either

3    our lease or a lien, are going to be sold to another party,

4    not even AHS.  Another party.  I believe there was an e-mail

5    in there to that effect.  Kiran is attempting to locate it.

6    But they may be selling to a third party.

7            Well, if they're telling us they're selling to a

8    third party, then you can be darned sure that those assets are

9    going to disappear somewhere or be held by someone else.  So I

10   think there's two very, very important elements here,

11   Your Honor.  One, the fact that they have engaged in this

12   transaction to really deprive NFS Leasing of their ownership

13   interests in the property, and their lien on the other

14   equipment, because it's important to note that we have both.

15           And, secondly, besides the fact that they've entered

16   into this transaction, there are multiple lawsuits out there

17   against this entity.  Frankly, I was involved in a prior one.

18   There's out-of-state cases, collection actions, other actions

19   that are against SA Hospital.  I hate to say this.  This is

20   unfortunate.  But this hospital is not long for life.  And,

21   certainly, they should not be permitted, or AHS, as the case

22   may be, should not be permitted to use and profit -- they're

23   making money, presumably, by using our equipment on which we

24   own and which we have a lien without paying for it.  And

25   that's exactly what they've been doing for the past seven

 1  months.

 2          There is no dispute.  You didn't hear anything

 3  either off the record or on the record that they've made any

 4  payments.  Just that, Well, we're going to talk to them and

 5  try to get something worked out.  Well, they -- we've been

 6  doing that and our patience is finished.  We have been more

 7  than reasonable.  We are the victim here.  We have been more

 8  than reasonable in trying to work something out.  And we have

 9  been stonewalled right and left by AHS and SA Hospital in

10  trying to get payment.

11          I understand that maybe they don't have any money.

12  That's not our problem.  We're a small company.  This is a

13  big, big deal to us.  This is important.  I mentioned earlier,

14  another thing that is sort of evidence of this transfer and

15  conceal, we have learned, and it's paragraph 61 of the

16  affidavit, that the landlord had sold the property to a

17  different entity, Twain, by special warranty deed and sold the

18  improvements on the property to SA Hospital Real Estate

19  Holdings, LLC, by special warranty dated December 21, 2021.

20          So SA Hospital has actually sold, and there's now a

21  different entity that actually owns the land.  So who knows

22  where everything is going to end up?  We have no comfort level

23  that people, other creditors and AHS for that matter, or maybe

24  some other third party, is not going to come in here and

25  remove our assets.  We've not been given access to our assets.

1    We are entitled as a matter of law to a replevin.  We are

2    entitled to that under the documents.  We are easily able to

3    prove, and I don't know if the Court wants me to go into it,

4    but we are easily able to prove the basis for a replevin.  I

5    will very quickly go through what the standards are.

6              The first standard for a replevin, which is what the

7    prejudgment attachment is based on.  So I think it is

8    important that we establish for the record the basis of a

9    replevin action.  AHS is the owner of the personal property.

10   That's not -- I don't think that's going to be in dispute.

11   Or -- or entitled to possession.  So either by virtue of the

12   lease or by virtue of the UCC filing pursuant to our security

13   agreements signed by SA Hospital back in 2021, we are entitled

14   to possession.

15             Two, the property is wrongfully detained by the

16   defendant.  There's no doubt about that, Judge.  The documents

17   speak for themselves.  Not only when you can see from all of

18   the e-mail exchanges and all the efforts to collect, but the

19   security agreement that is signed, the equipment lease

20   agreement entitles us upon default to possession and is

21   wrongfully being detained by Defendant SA Hospital.

22             The third aspect for replevin is the value of it.

23   We have provided that, Your Honor, in one of our attachments.

24   I believe the value is roughly 2.1 million.  That's not an

25   exact figure.  But that's roughly what my client has valued

1    the equipment.

2            Four, the property has not been seized by any

3    process, execution, or attachment.  We believe that to be the

4    case.  But -- and this is where it really goes into the

5    element and why we should be granted a prejudgment attachment

6    today.  We are fearful that that is going to happen.  There

7    are these other lawsuits out there that, any day, can get a

8    judgment.  Any day, they can come into the hospital, run an

9    execution, whether it's through an out-of-state judgment, run

10   an execution through the sheriff, or if it's federal court,

11   the marshal, and remove our property.  So we are fearful of

12   that and that could happen any day now.

13           And then, number five, the plaintiff is in danger of

14   losing the property unless removed from Defendant.  Well,

15   based on what I just stated on four, and the fact that AHS is

16   now involved in the purchase of the equipment and the assets

17   of SA Hospital, we are in absolute danger of losing the

18   property.  They are -- S- -- NF- -- sorry, AHS -- I've got to

19   get my acronyms right.  AHS is an out-of-state entity also.

20   And while you've heard assurances, and I'm sure you will hear

21   assurances, that the property isn't going anywhere, that they

22   want to run it.  They have properties in North Carolina.  They

23   have properties elsewhere.  Who knows -- if this fails, which

24   I hate to say this, and it's -- and it's sad to say this, but

25   when -- I shouldn't even say "if."  When this hospital, sadly,

 1   fails, they're not going to keep the equipment there.  They're

 2   going to take it away.  It's going to disappear.

 3           And unless you grant us the relief that we're

 4   seeking, there is a serious threat, not only from AHS, but

 5   from other creditors that this property will disappear.  That

 6   these assets that we own, that NFS property owns, and NFS

 7   property has a lien on, two separate categories, are going to

 8   disappear.

 9           So I believe, Your Honor, by our pleadings which are

10   extensive, as you know, we have established the basis and the

11   right for a prejudgment attachment.  And we've also

12   established our right to a replevin which is what we're asking

13   the Court to do with, essentially, the prejudgment attachment.

14           Your Honor, I am certainly open to any questions

15   that you may have about anything that we've filed or any of

16   the presentation that I've made today.  I'm happy to answer

17   anything that you might want to ask.  Thank you.

18           **THE COURT:**  Can you tell me what bond you are

19   prepared to post?

20           **MR. SCHERCK:**  We are prepared to post a bond equal

21   to the value of the equipment which is approximately -- ah,

22   thank you, Kiran -- $2,113,599, is what -- excuse me.  And I'm

23   glad you asked that, Your Honor.  We valued the equipment

24   based on remarketing, resale.  It was done internally because,

25   again, we don't have access to the equipment, so we can't see

1    it.  We can't see if it's in great condition, terrible

2    condition, whatever condition.  So we, basically, had our

3    internal people come up with that valuation based on what this

4    type of equipment that's subject to the lease could be sold

5    for.

6            And we're ready to post that.  Obviously, any

7    prejudgment attachment order would be subject to, as I

8    understand the law, to posting the bond, and we would stand

9    ready to post that bond.

10           **THE COURT:**  And are you proposing then that the

11   marshals go into the hospital and remove all of the equipment?

12           **MR. SCHERCK:**  We -- we are proposing that.  However,

13   in conjunction, and I would, obviously, want to discuss this

14   with my clients, should the Court be inclined to grant us, we

15   understand it's an operating hospital.  You know, we've been

16   trying to work with them for almost seven months.  So we would

17   be willing to work with a reasonable lying-down period of the

18   hospital so we can take our equipment.  We would not -- we

19   understand this.  We're not out there to destroy people's

20   lives.  We just -- we just want to get paid and get our

21   equipment back.

22           So if the Court is inclined to grant our motion,

23   which I think there's an absolute legal basis to do so, then

24   we would certainly work out a reasonable schedule for the

25   equipment to be removed and to be inventoried and removed so

 1  that the patients can be relocated.  The patients can be

 2  protected.  I can safely say that without consulting with my

 3  client because I am sure that's exactly how they feel and what

 4  they'd be willing to do.

 5          So if you would grant our motion today, and then we

 6  post the bond, we would not immediately send in the marshal to

 7  remove it. Excuse me.  Sorry.  We would want something in the

 8  order, as you've indicated earlier, that the equipment would

 9  not be removed, and then we would come up with a reasonable

10  time frame to have the equipment then removed in an orderly

11  basis so that the patients could be relocated to another

12  hospital.  Thank you, Your Honor.

13          Any other questions?  Sorry.

14          **THE COURT:**  All right.

15          **MR. SCHERCK:**  Thank you, Your Honor.  I appreciate

16  it.

17          **THE COURT:**  Mr. Klein?

18          **MR. KLEIN:**  Yes, Your Honor.  Mayer Klein, Frankel

19  Rubin Klein on behalf of SA Hospital.  Thank you.

20          So a few points preliminarily.  As the Court noted

21  originally, no notice was provided for this particular

22  hearing.  Now, there's a question in my mind as to --

23          **THE COURT:**  Well, that's not actually true,

24  Mr. Klein, because the Court provided you notice this morning,

25  even though Plaintiff requested that it receive this relief

1    ex parte, which the statute does allow.  So it's not true that

2    you did not receive notice of that because I made sure to

3    provide you notice of that and that's how you are here today.

4              **MR. KLEIN:**  And that is --

5              **THE COURT:**  You may not have received notice last

6    week, but, obviously, you and your client have been aware of

7    the ongoing nature of this dispute for quite some time.

8              **MR. KLEIN:**  Yes, Judge.  And I misspoke.  The Court

9    did provide us notice this morning.  We appreciate that.  I'm

10   just saying from the plaintiff's perspective, whatever reason,

11   NFS sought to do this without notice.  I think the

12   presentation that we would make to Your Honor would include

13   some filings, counter-affidavits, which could be filed and

14   will explain the situation in greater detail.  Obviously, with

15   the Court just notifying us this morning is not enough time to

16   put that together to give you a counter-affidavit.

17             So as I go through the proceedings, I ask the

18   Court's consideration that certain things can't be of the

19   record on behalf of SA Hospital because there's not enough

20   time to put that together.

21             That being said -- and Plaintiff has been in

22   communication with my office, NFS, for months, and knows where

23   I am.  In fact, plaintiff's counsel litigated, as he

24   indicated, another matter, both with SA Hospital and with AHS,

25   and plaintiff's counsel knows who the attorneys are.  And we

1    could have done this with notice.  I don't think, certainly

2    not my office, and certainly not AHS and their counsel were

3    going to be notified and take away equipment from the

4    hospital.  The people and attorneys, Judge, on this call would

5    not engage in any such process.

6            That being said, again, before I turn to what

7    Plaintiff has pled, I think it's important to share with the

8    Court what transpired in Massachusetts.  So about 30 days or

9    so ago, NFS filed another lawsuit in Massachusetts in the

10   trial court of Massachusetts, Cause No. 2377-CV-00066.  And in

11   that suit, NFS brought a claim, a lawsuit, against SA Hospital

12   Acquisition Group, LLC, the same defendant in this case, and

13   then sued guarantors Ben Klein, no relation, Jeffrey Ahlholm,

14   and Lawrence Feigen, and sued them for the exact same items

15   here, breach of contract and then a guarantee action.

16           So the collection action has been instituted.  You

17   can't have more than one action at the same time.  The

18   collection action has been instituted, both against my client

19   and against the guarantors.  So what are we here for now?

20           Plaintiff has filed not a collection action,

21   supposedly, but Plaintiff has filed an action for a writ of

22   prejudgment attachment.  And the very specific standards, and

23   Plaintiff has talked about through its counsel, what are the

24   standards?  There are three things that have been pled which

25   would give rise to a prejudgment attachment.

1              I don't think any one of them apply.  Firstly,

2    plaintiff says 521.010(1), where the defendant is not a

3    resident of the state.  It's unclear, Your Honor, and I would

4    need time to brief this for you should you desire further

5    legal argument on this, whether or not under this section

6    we're deemed to be a resident of the state.  The reason I say

7    this is there's no question -- we're all familiar with the

8    fact that there's a great deal of discussion in some of the

9    recent case law, that when you deal with an LLC, you look at

10   where its members are housed, where they reside.  And my

11   clients have an LLC and the owners reside outside of Missouri.

12   So from that standpoint, we're not a resident of the state.

13             But from the standpoint of does the property

14   actually exist in St. Louis, in Missouri?  Yes.  And we only

15   conduct business in Missouri.  So the issue, again -- the

16   narrow issue is defining residency under that statute for

17   purpose of a prejudgment attachment.  I don't see the case

18   law, Your Honor, on that yet.  Again, I would need a little

19   more time to brief that for you if you wanted.

20             All I'm saying is my client, while -- it only

21   conducts business in Missouri.  I'm giving you the factors to

22   consider that maybe we are a resident.  We only have business

23   in Missouri.  We only have bank accounts in Missouri.  We have

24   500 employees and they're all only in Missouri.  We file a

25   Missouri tax return.  We have business records only in

 1   Missouri.  We're only authorized to do business in Missouri.

 2          So query whether or not this is a resident of

 3   Missouri or not, and if it is not a resident of Missouri, I

 4   understand Plaintiff's point, but I think I haven't seen the

 5   case law yet.  I don't have enough time yet.  But it seems to

 6   me under this particular statute, we might be deemed a

 7   resident of Missouri.  That's the first point.

 8          Moving from that, and as Plaintiff's counsel says,

 9   he doesn't really want to get a prejudgment attachment solely

10   on the basis of residency versus no residency.  So what does

11   Plaintiff point to?  Plaintiff points to the other two aspects

12   of its claim, 521.010(9) and 521.010(10).  (9) says you can

13   get a prejudgment attachment where Defendant's about to

14   fraudulently convey or assign his property or effects so as to

15   hinder or delay creditors.  (10), very similar, about to

16   conceal, remove, or dispose.

17          I can tell Your Honor, and we'll be happy to file an

18   affidavit within 48 hours, that absolutely 100 percent, we are

19   not about to fraudulently convey property, assign property,

20   effects.  We have no intention to do that.  We have never had

21   an intention to do that.

22          This is -- with all due respect, this affidavit is

23   false that Plaintiff has filed.  There is no basis for it.  At

24   no time have we ever done that, have we ever contemplated

25   that.  We are serving the patients in this hospital.  We're

1   diligently working to continue to do that.

2          Judge, Plaintiff says, Well, they're selling --

3   they're selling the assets.  Do we want to consider every sale

4   of a hospital as a fraudulent conveyance?  Obviously, we're

5   going to work through this.  My firm and the counsel for AHS,

6   hopefully, have a decent enough reputation.  We're not going

7   to create an asset purchase agreement to go ahead and

8   fraudulently dispose of NFS' assets.

9          Whatever NFS has, and we'll put this in an

10  affidavit.  And I'm speaking -- I'd be happy to be sworn if

11  that's what the Court needs in this situation -- on behalf of

12  my client, the hospital.  We are not selling any asset.  Any

13  asset that belongs to NFS.  We're trying to sell the hospital

14  so that AHS, which specializes in these distressed situations,

15  can come in and take care of patients in this area which is a

16  troubled area, a difficult area to find good care, and we've

17  located AHS and we're close to working out a deal.

18          At no time, as an officer of the court, was there

19  ever any provision discussed, contemplated in writing, in any

20  form, saying we are going to sell property belonging to NFS.

21  Never happened.  Never contemplated.  Never would happen.  All

22  of NFS property will always remain NFS property.  Should NFS

23  and the purchaser reach a deal with regard to an assumption of

24  the lease, then the lease will be properly and duly assumed.

25  But it is -- it's not honest to say there was any effort to

1  ever fraudulently convey any property.  It's simply not the

2  case.  Never contemplated.  Never thought about.

3          It seems to me, Judge, that this is really -- and I

4  think Plaintiff's counsel, to some extent, said this.  It's

5  really a collection action.  They want to be paid.  And I also

6  represent creditors who want to be paid also.  I get that.

7  And we're trying to work to accomplish that.  But the issue is

8  not a collection action right now.  The issue is whether we

9  fall within the statute of a prejudgment attachment.  And

10 those three points that were mentioned by NFS, resident, we've

11 talked about -- and that's not the main issue -- the fraud,

12 the concealment.  It's not true.  No one's concealing

13 anything.

14         We will stipulate now on the record.  NFS can come

15 in and at a reasonably scheduled period of time within

16 72 hours, we will -- I -- my client, owns the hospital.  I

17 will direct -- I say this as an officer of the court.  I will

18 direct AHS who's there every day managing it to cooperate --

19 I'm sure they'll speak for themselves and agree -- to

20 cooperate and allow Plaintiff to come in, and without

21 disturbing the care of the patients, to come in and fully

22 inventory everything that it has a collateral position on and

23 make sure.

24         And I will personally report back to the Court.  If

25 I have to send one of my lawyers down to walk through to make

1  sure this happens smoothly, we will do that.  And NFS should

2  be able to reasonably show with due notice, and we can work it

3  out, no problem, 72 hours, they can walk through, bring

4  everybody they want to that's reasonable and go through, and I

5  don't know if they tag it -- I don't know if that makes

6  sense -- but whatever the inventory process that's reasonable,

7  we can engage in that and make sure it's there.  So that will

8  be done.

9          We will stipulate -- we will stipulate no property

10  will -- from this NFS leased property, no property will leave

11  this hospital without this Court being fully apprised of

12  what's happening in advance and blessing this -- blessing the

13  matter if that is what is required.  We're not fraudulently

14  conveying.  We're not even thinking of moving property from

15  the hospital.  We're here to care for people.

16          They can inventory it with reasonable safeguards to

17  make sure no patients are disrupted.  We will not move one

18  piece of property.  Forget all of it.  Nothing will be moved.

19  We have no intention to do this and I'm sure we will work

20  together.  We -- I, personally, am instructing AHS as the

21  manager to fully cooperate with this process.

22          As to whether or not, there was some mention at the

23  end by Randy that maybe we'll sell it to somebody else.  I can

24  tell you again.  Whenever you're in a negotiation, Judge, of

25  course, you can't say for sure 100 percent that the deal with

1   AHS is going to close in a week or two weeks.  I can't tell

2   you that because we know that sometimes something doesn't

3   close.  So if it doesn't close with AHS, we're going to sell

4   it to somebody.

5              My pledge to the Court, my pledge to all parties

6   concerned, is it doesn't matter who it's sold to.  The same

7   rules apply.  It will -- this NFS property will not leave the

8   hospital.  Period.  We will sign off on whatever is necessary

9   to assure that.  All of NFS -- all of the property that NFS

10  has leased to us will not leave the hospital.

11             **THE COURT:**  Well, Mr. Klein, can you tell me, in the

12  discussions that you have had with AHS with respect to the

13  sale, are you proposing to sell to AHS this leased property?

14             **MR. KLEIN:**  No.  We are proposing to sell whatever

15  we have a right to sell.  Anything that is leased, we are

16  proposing to have AHS pick up the lease and have -- but

17  that's -- obviously, there's a two-part process.  You come to

18  a -- I guess we'll call it a contract, Your Honor, where it's

19  agreed to by everybody, this is what should happen.  And then

20  there's a period of time before the contract is closed where,

21  at any sale, you go and you try to say, Okay, we'll be happy

22  to take over the lease.  And I know there have been

23  discussions -- I'm going to let AHS talk about it -- but AHS

24  dealing directly with NFS.  That would not be for me to say.

25  That would be for AHS to say.

1          But we are not selling now or ever any property

2    belonging to anyone else.  Be that NFS or any other property.

3    None of it is being sold.  All we're selling is our interest

4    that we have as the owner/operator of the hospital.  If we

5    hold a leasehold interest, we're going to assign it to the

6    extent the lease provides for that.  And if it doesn't provide

7    for that, it would be required to have a new lease entered

8    into between AHS or whoever buys it and the lessor.

9          **THE COURT:**  All right.  Thank you.

10          And just let me ask counsel for AHS because

11   Mr. Klein has, in fact, made certain representations about

12   what his client would be directing your client to do.  And is

13   there anything that AHS wants to place on the record contrary

14   to what Mr. Klein has represented?

15          **MR. STOEBERL:**  The only thing I wanted to say,

16   Your Honor, I'm just making an objection because they really

17   have no standing here.  This action is only directed against

18   SA Hospital.  I'm just making an objection for the record.

19          **THE COURT:**  I understand that.

20          **MR. STOEBERL:**  Thank you, Your Honor.  That's all I

21   wanted to say.  Thank you.

22          **MR. RISKE:**  Tom Riske for the record on behalf of

23   AHS.  I guess just as a preliminary matter with respect to the

24   standing issue, I guess I would say, you know, they brought us

25   into this by alleging all of these, you know, frankly,

1   fraudulent acts that they said we are either doing or in the

2   process of doing.  So I believe we have standing for that as

3   well as the fact that they've acknowledged that we're a

4   secured creditor with potentially an interest in some of this

5   property.

6           But with that, I'll be very brief, Your Honor.  I

7   would -- you know, I don't need to restate everything that

8   Mr. Klein said.  I think he did a very good job of speaking to

9   the issues.  I would say on the record that we would support

10   the same stipulation that he put on the record.  And just

11   going a little bit further of just explaining why it,

12   you know, a sale of their assets is not taking place in this

13   case.

14           You know, it's kind of like a bankruptcy case where,

15   you know, you can't -- there's certain types of leases or

16   executory contracts that, you know, you can't compel the

17   assignment of the effects, and, you know, we're not in a

18   receivership here.  We're not in a bankruptcy proceeding here.

19   So, obviously, we need their consent to the extent that we're

20   going to accept into the shoes of them and operate under the

21   existing documents.  Or we can enter into negotiations with

22   them to have a new agreement.  And that is what has been going

23   on since we've been involved in this process, Your Honor.

24           And I will state for the record, we -- you know,

25   there have been delays as, you know, both parties have said on

1    the record.  But this is a complicated deal, as Mr. Scherck

2    acknowledged.  There have been a lot of issues to deal with

3    voluminous creditors in this case to try and push this sale

4    forward.

5           But I would submit for the record and to

6    Mr. Scherck's comment about, you know, NFS' comfort level.  I

7    think they're in probably the best position of any creditor in

8    this mess, Your Honor.  You know, you've heard that they're in

9    a first position on these assets.  You've heard that the

10   parties are working diligently to try and make them happy and

11   try to get an arrangement in place if the sale goes forward.

12   And if the sale does not go forward, I don't think that they'd

13   be any worse off given that their valuation of their

14   collateral exceeds the amount that they are -- that they

15   allege they're owed under the circumstances.

16          Again, there have been no representations in any of

17   the e-mails that were attached to their papers of either SA or

18   AHS making any threats or anything to sell, remove, or do

19   anything to this property.  And, again, we'd be more than

20   comfortable to enter into the stipulation, and with

21   Mr. Klein's directive with respect to granting access, of

22   course we will comply with that.

23          So with that, Your Honor, I'm happy to answer any

24   questions.  But, you know, given the position of the parties,

25   I wanted to keep our comments pretty brief.

1          **THE COURT:**  All right.  Anything further,

2    Mr. Scherck?

3          **MR. SCHERCK:**  Yes, please.  And I'll be very brief,

4    Your Honor.  First of all, I think it is completely

5    disingenuous to say that they've been working diligently.

6    That is nonsense.  We have been working diligently to try to

7    get them to either assume the lease as they -- or sign a new

8    lease as they've promised to do so or make payments.  This is

9    not a collection action, contrary to what Mr. Klein said.

10         This is an action for replevin, unjust enrichment,

11   and conversion.  And the only reason we had to go to these

12   means is because they ignored us, they refuse to give us

13   access to the equipment, they refuse to make payments.  And

14   I'm going to read a little bit from the affidavit.  And these

15   are e-mails from representatives of -- I'm sorry -- text

16   messages also.  But I'm going to read and I will point out in

17   the affidavit.

18         44.  On December 28, 2022, Gill, who is a

19   representative of AHS, advised NFS via text messages that the

20   new lease documents between NFS and AHS parties would be

21   signed and returned and an initial wire payment made by

22   AHS Parties that day.  That's in an e-mail.  Okay?

23         45.  The AHS Parties did not execute the new lease

24   documents and did not make an initial wire payment to NFS that

25   day as promised.

1          So this is back in December now, Judge, the end of

2    December.  Over two months ago that we have now been dealing

3    with AHS on this.  Much longer with SA Hospital.

4          Then on December 30, 2022, again, I'm reading from

5    the affidavit, paragraph 46.  Gill advised NFS that although

6    the AHS Parties had purchased the assets of SA Hospital --

7    they're telling us, they purchased it through an asset

8    purchase agreement, they had not closed on the sale.  So

9    they're admitting the purchase.  And that SA Hospital was

10   actively seeking to sell its assets to a new buyer other than

11   AHS Parties, which puts us in further jeopardy.

12         And when Mr. Riske said we have a first priority

13   lien, we do, on the equipment that is not leased.  I want it

14   to be clear for the record.  We own the equipment.  It's

15   leased.  SA Hospital does not own it.  We own it.  It's ours.

16   Then we also have a first priority lien on all the other,

17   quote, assets as per our UCC-1 financing statement.

18         Your Honor, we're losing money every day.  And this

19   is not a collection action.  We're entitled to recover our

20   lease payments.  But we own the equipment.  So we're entitled

21   to the equipment also.  This is not either/or.  We're

22   entitled -- they're in default.  You have not heard one

23   statement from anybody on the other side that they're not in

24   default.  They're in default.  We're entitled in the

25   Massachusetts action for the collection which is what we're

1   pursuing, and in this action, for the equipment which we own.

2   Thank you very much.

3           **THE COURT:**  All right.  And just with respect to

4   that last point, Mr. Klein, I take it you are not contesting

5   that your client is, in fact, in default?

6           **MR. KLEIN:**  That is correct, Your Honor.

7           **THE COURT:**  Okay.  Anything further from either

8   party?

9           **MR. KLEIN:**  Judge, just briefly, if I may?

10          **THE COURT:**  Very briefly.

11          **MR. KLEIN:**  Okay.  Thank you.  I just want to call

12  the Court's attention to a case called *Chevron USA v. 11500*

13  *Manager, LLC.*  It is -- I'll get you the cite in a second.

14  It's a 2009 case.  It's the Western District case that's cited

15  by Judge Ortrie Smith.  And there on page -- it's cited as

16  2009 US District Lexis 58330, on page 3 of 4.  It was a

17  prejudgment attachment case.

18          And the Court says -- Judge Smith says, A

19  prejudgment attachment may be obtained in circumstances as

20  permitted by state law, as we all know.  And it goes on to

21  say, However, there's no right to a prejudgment attachment.

22  And he states that such remedies are not favored, principally,

23  because they are subject to a constitutional attack on due

24  process grounds.  This is particularly the case when, as in

25  that case, and as here, the relief is sought ex parte.

1            Plaintiff's unjustified failure to notify Defendants

2    of the hearing causes the Court to believe a prejudgment

3    attachment should not issue.  So that's what he found.

4            And what I see is, in the Massachusetts case, which

5    we were just sued, there was a lawsuit to collect the

6    judgment.  And it wasn't only for the lease, Your Honor.  And

7    I'm quoting from that case and I gave you the cite where they

8    filed the lawsuit.  They want, in that case, the damages,

9    which include the fair market value of the unreturned

10   equipment.  So in that suit, they're suing for a million six,

11   plus -- I'm reading the remedy from my phone -- plus the fair

12   market value of the unreturned equipment.  This suit was filed

13   January 19, 2023.

14           So NFS is seeking the lease.  NFS is seeking

15   whatever is out there with regard to unreturned equipment,

16   which hasn't even happened yet.  But NFS is saying, We want a

17   judgment in Massachusetts against the hospital and against all

18   the guarantors.  That's already there.

19           So the only real issue here is not about payments

20   being made.  The only real issue is are we dealing with

21   grounds for a prejudgment attachment?  And that's when we take

22   you back into the fraud discussion.  There is no fraud.  There

23   never was a fraud.  We were never going to sell any assets

24   belonging to NFS.  Not now.  Not ever.  We're happy to

25   stipulate to that.  I will put that -- this is an affidavit.

1   You can count this an affidavit, all that I've said today on

2   behalf of the hospital.

3           We hope to have that sale culminate in a closing

4   hopefully before too long and we are, again, happy to have NFS

5   come out in the next few days.  I'll have somebody from my

6   office.  I'm directing AHS to cooperate to inventory that.

7   And this hearing without notice, this prejudgment attachment,

8   simply states things that are not true.  Never was, now or

9   ever, any intent to remove any equipment from this hospital,

10  anything that NFS has, never was any intent or ever happened

11  for any sale of equipment belonging to NFS.  And I'm sure it

12  will not happen because that is not what we're doing.  We're

13  trying to serve the needs of the community and take care of

14  the residents.  That is our goal.  Take care of the patients,

15  Your Honor.  That is our goal.

16           **THE COURT:**  Is there anything further?

17           **MR. SCHERCK:**  Briefly, Your Honor, with respect to

18  the fraud.  Here's an example of fraud, and I read it earlier.

19  On December 28, 2002, Gill advised NFS via text messages that

20  the new lease documents from NFS and AHS Parties would be

21  signed and returned and an initial wire payment made by the

22  AHS Parties that day.  How can we possibly trust anyone

23  involved?  That was over two months ago.  How can we trust

24  anyone involved here that they are not going to take the

25  equipment, have it disappear, transfer it elsewhere, when they

1  make these representations to us and then they don't live up

2  to them?  That is all.

3     **MR. KLEIN:**  This -- that's a claim.  I don't know.

4  AHS can address this.  All I know is my client's not involved

5  in anything having to do with a prejudgment attachment.  Randy

6  has an issue with regard to what AHS says.  I guess I'll let

7  AHS say that.  But I have no idea what that has to do with

8  what's before you.

9     **MR. RISKE:**  Your Honor, Tom Riske.  I won't go into

10  settlement discussions, but I mean, I can say I believe, and I

11  believe if you read all the e-mails that are attached, AHS has

12  been very straightforward with NFS in the fact that we are

13  happy to get on board once this deal closes.  Again, we are

14  looking to assign or have a new lease agreement or something

15  to deal with this issue that has to be dealt with.

16     So -- and I guess I also would say for the record,

17  no one is more frustrated than us that this deal hasn't closed

18  and we are working to get it closed which would, in turn,

19  hopefully, resolve this issue.  The idea that any sort of

20  discussions or negotiations between the parties represent some

21  sort of fraud, I think, is, you know, frankly, beyond the

22  pale, Your Honor.

23     **THE COURT:**  All right.  Anything further?

24     **MR. SCHERCK:**  One other very quick sentence,

25  Your Honor.  How long must we wait?

```
 1              THE COURT:  All right.

 2              MR. SCHERCK:  We've been trying for --

 3              THE COURT:  I'm through.  I'm through.  I'm through.

 4    I understand you have been waiting.  All right?

 5              MR. SCHERCK:  You got it.  You got it.  Thank you,

 6    Your Honor.

 7              THE COURT:  I have heard all of this.  I have read

 8    all of it.  And I am going to deny the request for a

 9    prejudgment writ of attachment.  But I am only denying it if,

10    in fact, the parties are in agreement to enter into a consent

11    on the record that within no more than 72 hours, the parties

12    will cooperate with the plaintiff to permit a full inspection

13    of the property and assets that are subject to its UCC

14    financing statements, and in particular, the matters that are

15    subject to the lease.  And should the plaintiff wish to tag

16    that property, it may do so.

17              Secondly, that the defendant, SA Hospital

18    Acquisition, which is the only defendant to this prejudgment

19    attachment, represent that it will take no action to transfer

20    or permit any other entity to transfer this property and that

21    it will safeguard the existence of this property pending this

22    litigation.

23              Now, you know, folks, this is only going to delay

24    things so long.  I am going to go back to the grounds for

25    prejudgment attachment.  And that is where the defendant is
```

1    about fraudulently to convey or assign his property or effects

2    so as to hinder or delay his creditor or has already done so.

3    I do not see any evidence of that.

4            To the contrary, we have an operating hospital and

5    the equipment, according to Defendants, is still there.  They

6    intend to continue to have it be there and to, in fact,

7    continue to use it.  Whether they are entitled to continue to

8    use it is a different matter.  And I will get to that in just

9    a moment.

10           Where the defendant is about fraudulently to

11   conceal, remove, or dispose of his property or effects so as

12   to hinder or delay his creditors or has already done so.  Now,

13   the aspect of that that gave me great pause was conceal.  And

14   I was and continue to be terribly concerned by the fact that

15   these defendants have not permitted NFS to get into the

16   hospital and inspect the property that it is entitled to,

17   perhaps, replevin.  All right?  And that gives me great

18   concern.  And that is the one aspect of this that has given me

19   great concern.

20           The mere fact that the parties are trying to sell

21   the hospital does not tell me -- no one has shown me the terms

22   of that contract.  I do not see anything here suggesting that

23   any sale to AHS or any other entity would be a sale that is

24   jeopardizing the plaintiff's interest as opposed to a sale

25   that would be subject to the plaintiff's interests.  Indeed,

1    it appears that the parties have been discussing a proposed

2    lease.

3           Believe me, I am terribly sympathetic to the

4    plaintiff's position.  It is quite clear that if this

5    transaction is going to take place, it has taken a very, very,

6    very long time.  And it appears that AHS has also made

7    promises that it has not kept.  But the reality is that when

8    people are attempting to close a significant transfer of

9    property like this, things do not always transpire as the

10   parties hope they will and do not move on the schedule that

11   they hope they would.  I am unwilling to read that e-mail from

12   AHS saying we're going to get it to you today as an indication

13   that it is fraudulently attempting to conceal, remove, or

14   dispose of its property or assets.  Indeed, it's SA's property

15   and assets.  And I do not see that as evidence of that.

16          I see that as evidence of parties to a proposed

17   transaction that are making promises that they were not in the

18   position at that moment in time to keep.  But that relates to

19   a transaction to sell the hospital.  And I do not see any

20   evidence here that the defendant is about to fraudulently

21   conceal, remove, or dispose of its property or effects so as

22   to hinder or delay the creditors or that it has already done

23   so.

24          As I said, the sole aspect of this that has given me

25   concern is the concealment aspect.  And so I am willing to

1   withhold taking further action on this writ of attachment

2   subject to the defendants' agreement -- and I need the

3   agreement of both defendants -- that they will, in fact,

4   facilitate, not just permit, but facilitate the full

5   inspection of these assets and property -- and property by the

6   plaintiff.

7         And, certainly, should that inspection give rise to

8   further cause of concern from the plaintiff, we can hear about

9   it then, if, in fact, the plaintiff gets in there and it's

10  just not there anymore.  The assets aren't there.  The

11  property's not there.  Then, obviously, we are talking about a

12  totally different situation.

13        Now, I understand the plaintiff's concerns.  And,

14  obviously, folks, I need those two things.  The commitment to

15  facilitate inspection, and should the plaintiff wish to do so,

16  tag that property, and secondly, the agreement -- basically, a

17  full standstill agreement that the plaintiff will do -- that

18  the defendants will do nothing to transfer, or in any other

19  manner, jeopardize the property and the property interests of

20  the plaintiff without approval of this Court.

21        Now, that means that the SA Hospital's not going to

22  enter into any deal to sell the hospital without full

23  disclosure to NFS so that NFS can be confident that its

24  interests are being protected.  I understand that there may be

25  other creditors out there with respect to SA Hospital.  But on

1   this record, I cannot find that these particular assets are at

2   risk of being transferred or in any other way concealed or

3   prohibited.

4          Now, folks, this is a very short-term situation

5   because the reality is the lawsuit that the plaintiffs have

6   brought here is a lawsuit for replevin.  And absent you all

7   closing this deal and assuming the lease or making the lease

8   payments in a manner that is acceptable to NFS, at this

9   moment, I am hearing no defenses to the plaintiff's action for

10  replevin.  But that, of course, is an action on full notice to

11  the parties with the parties' ability to defend that action

12  should they have any defenses.

13         And, you know, frankly, I don't know what's going to

14  prevent the plaintiff from immediately, after providing,

15  you know, proper notice to the defendants, for immediately

16  moving for judgment on its claim for replevin which would,

17  in fact, entitle the plaintiff to retrieve this property.

18         Now, that is -- from the standpoint of the

19  community, that would be a terrible shame if the plaintiff

20  were, in fact, to retrieve all of this equipment in a manner

21  that causes the closing of the hospital.  Whether or not that

22  is an inevitable -- whether the hospital is going to be closed

23  in any event, I don't know.  Clearly, this sale has taken much

24  longer than the parties anticipated.  And if, in fact, the

25  parties are going to close on this sale, they're going to have

 1    to do it before the plaintiff is in the position to obtain

 2    replevin under the law.

 3            If, in fact, it has leased equipment to the

 4    defendant and the defendant is in default, which the defendant

 5    has admitted, and is not in a position to cure that default,

 6    then I don't know what is going to prevent the plaintiff from

 7    obtaining replevin of this equipment.

 8            And so if you all are going to enter into an

 9    agreement for the sale of this hospital from the community's

10    standpoint, I certainly hope that you do.  But you can't take

11    forever to do it.  You cannot take forever to do that at the

12    expense of the plaintiff and just expect the plaintiff to do

13    nothing to protect its own interests.

14            Default occurred in September.  We're talking about

15    six months of default here.  From all I can tell from review

16    of these documents, the plaintiff has been very patient.  But

17    there is an end to that if, in fact, the plaintiff has

18    properly entered into these agreements to lease the equipment

19    to the defendant and the defendant has not made payment.

20            At some point in time, the plaintiff is entitled to

21    get its equipment back or to get paid, one or the other.  And

22    the mere -- I find that a writ of attachment in this

23    particular instance is an extraordinary relief and will not

24    cause this equipment to, effectively, be removed on a writ of

25    attachment, when, in fact, the plaintiff has its replevin

```
 1    action pending because, on this record, I do not find that

 2    these assets are about to be fraudulently transferred.

 3              Now, I need to hear first from the defendants

 4    whether they are in a position to make -- to provide the

 5    assurances that this Court is requesting.

 6              MR. KLEIN:  Thank you, Judge.  On behalf of

 7    SA Hospital, Mayer Klein, Frankel Rubin Klein, we will provide

 8    full assurance to the Court and on the record that, within

 9    72 hours, we will facilitate NFS being able to go into the

10    hospital and fully inspect all of its property and to make

11    sure that that is done to their satisfaction.

12              We will direct AHS as the present manager of the

13    hospital to fully cooperate and to also join in that

14    facilitation so there's no issues as to, well, who should have

15    done what.  We will take that responsibility to make sure AHS

16    fully cooperates and joins in the facilitation of NFS looking

17    at their entire equipment.  If they want to tag it, I don't

18    know how tagging relates to servicing the -- to the extent it

19    doesn't interfere with what you have to do when you take care

20    of patients, of course, we will agree to tagging without any

21    question, if that's what NFS wants.  And there will be no

22    action, no transfer of any kind, of any way, shape, or form,

23    that will be transferring NFS' property.  Any sale that takes

24    place, we will certainly let NFS and the Court know if the

25    sale is about to conclude.  This is the sale that's going to
```

1  happen.  Here is the property that's NFS.  Here's how we

2  intend to have it handled.

3          My belief, Your Honor, is not only will we let

4  everyone know, but the new buyer will almost buy -- almost

5  automatically have communication as part of this deal with NFS

6  so that NFS will be assured, not only from me as the seller's

7  point, but there's no way a buyer could come in without

8  dealing openly with NFS and letting them know, We seek to buy.

9  This is what we're going to be able to do as far as assuming

10 the lease.  So we are confirming everything that the Court

11 asked us to confirm and we will stand by that and are

12 committed to that.

13          **THE COURT:**  Mr. Riske, is there anything that

14 Mr. Klein has stated that AHS is not prepared to cooperate

15 with?

16          **MR. RISKE:**  Tom Riske on behalf of AHS.  No,

17 Your Honor.  I believe we can commit to the same thing as

18 outlined by the Court and Mr. Klein --

19          **THE COURT:**  I don't want to find that Mr. Klein has

20 made these representations and that AHS has come in and said,

21 Well, no.  The writ of attachment wasn't against us.  We're

22 not doing that.

23          **MR. RISKE:**  Yeah.  We will agree.  We agree,

24 Your Honor.

25          **THE COURT:**  All right.  Now, Mr. Scherck, is there

1    any reason that this does not properly protect your clients

2    from the unlawful transfer and fraudulent transfer and

3    concealment of this property as you move forward, as

4    expeditiously as the law permits you to, to seek replevin of

5    the equipment?

6             **MR. SCHERCK:**  Your Honor, that was the best loss

7    I've ever had.  And I appreciate you saying what you did and

8    making the comments that you did.  I have one question, more

9    of a clarification.  What if -- and you said the property

10   needs to be there.  What if some of it is missing?  What do we

11   do under those circumstances?

12            **THE COURT:**  I don't know.  I mean, you'll --

13            **MR. SCHERCK:**  Okay.

14            **THE COURT:**  -- just have to go in --

15            **MR. SCHERCK:**  Maybe we'll come back to the Court.

16            **THE COURT:**  -- further evaluate and we will go from

17   there.

18            **MR. SCHERCK:**  Because we have a very specific list.

19            **THE COURT:**  If, in fact, the defendants have done

20   something to dissipate the assets --

21            **MR. SCHERCK:**  Right.  That's the main concern.

22            **THE COURT:**  -- then you can deal with it, you know,

23   when that happens.  I assume in the normal course of life,

24   it's possible that a piece of equipment, you know --

25            **MR. SCHERCK:**  Right.

 1              **THE COURT:**  -- ended its useful life and someone

 2      stuck it in a closet somewhere.  I don't know.

 3              **MR. SCHERCK:**  Right.  I understand.

 4              **THE COURT:**  So we won't know that until you get in.

 5              **MR. SCHERCK:**  Until we get in there.

 6              **THE COURT:**  But prejudgment attachment is, honestly,

 7      a very extraordinary remedy here, especially in the context of

 8      an operating hospital where the defendants have an interest in

 9      having the equipment stay there and continue to use it.  And

10      so -- but I just want to make sure that everybody understands

11      that the denial of a prejudgment writ of attachment is a very

12      different thing than a determination based on the merits of

13      this litigation with respect to whether the plaintiff is or is

14      not entitled to replevin.  That is very different.

15              And you all are all experienced counsel.  You are in

16      a position to evaluate how strong Plaintiff's case for

17      replevin is.  And if you all are going to try and do some form

18      of sale of this hospital to save the hospital and continue its

19      operation, which I hope you can, and if you're going to do

20      that, then understand you're going to have to get back to the

21      table with the plaintiff and give the plaintiff something more

22      than empty promises.  Okay?  Because, right now, the point of

23      those received is a bunch of empty promises.  And perhaps they

24      were all made in good faith, but that doesn't keep them from

25      being empty.  All right?

1                **MR. KLEIN:**  Yes.

2                **MR. SCHERCK:**  Yes.  Your Honor, one --

3                **MR. RISKE:**  Understood, Your Honor.

4                **MR. SCHERCK:**  Yes, Your Honor.  One other very brief

5      statement.  First of all, I hope you feel better.  I've had

6      COVID.

7                **THE COURT:**  Thank you.

8                **MR. SCHERCK:**  It's no fun.  And it's no fun to work

9      when you have COVID.  So I appreciate you giving us all the

10     time today.  I appreciate all of that.

11               I will tell, just so the record's clear, that -- I

12     mean, obviously, I will have a discussion with my clients.

13     But it may be our intent to proceed with -- because there is a

14     process for a motion for replevin as opposed to just on the

15     lawsuit.  And I can tell you that there is a significant

16     chance, because I want full disclosure here, that we may be

17     proceeding in that manner.  Because as you can tell from my

18     presentation today, we want this expedited.  We want it

19     resolved.  And we're going to use whatever legal and proper

20     means we can to do so.  So I'm just saying that for full

21     disclosure.  That's all.  Thank you.

22               **THE COURT:**  All right.  Now, just so that we can

23     effectuate the representations that have been made here,

24     Mr. Scherck, do you want to draft and provide to the

25     defendants an agreement, a consent agreement, memorializing

 1  these promises?  I don't know if there's, like, for instance,

 2  additional detail you would like to put in with respect to the

 3  inspection.  And understand, by 72 hours, that's the minimum.

 4  If for some reason there's something unique about the

 5  inspection and the plaintiff wants to delay that, I do not

 6  think that would be in jeopardy of the plaintiff's rights

 7  here.  So that language should be, you know, that Plaintiff

 8  would be entitled to inspect within 72 hours or such later

 9  date as the parties may agree to.

10          And, Mr. Scherck, do you want to draft a document

11  and provide it to the defendants memorializing this agreement

12  and then the parties can sign that?

13          **MR. SCHERCK:**  We will do so, Your Honor.  Thank you.

14          **THE COURT:**  Are the parties all willing to cooperate

15  with Mr. Scherck to create and sign such a document?

16          **MR. RISKE:**  Yes, Your Honor.

17          **MR. KLEIN:**  On behalf of SA Hospital, Mayer Klein,

18  yes, we are.

19          **THE COURT:**  All right.  Is there anything further

20  that we need to take up at this time with respect to the writ

21  of attachment?

22          **MR. SCHERCK:**  No, Your Honor.

23          **THE COURT:**  All right.  Then thank you all.  And we

24  will draft up a very short order memorializing what I have

25  ruled here subject to the parties' agreement, written

1  agreement, which will also be filed in the court record.

2  All right?

3           **MR. SCHERCK:**  Yes.  So, Your Honor, so I understand,

4  there's going to be an order with respect to it, but then

5  there's going to be this supplement agreement that's sort of

6  going to be encompassed as part of that order, because as you

7  had said, it's sort of contingent upon our ability to inspect

8  and tag, if we like?

9           **THE COURT:**  Absolutely.  And if for some reason, if

10  that's not happening, I assume I will hear back from you.

11          **MR. SCHERCK:**  You will.  Thank you, Your Honor.

12          **THE COURT:**  Hopefully, I will be back in court by

13  then.  All right?

14          **MR. SCHERCK:**  Thank you, Your Honor.

15          **MR. KLEIN:**  Thank you, Judge.

16          **THE COURT:**  All right.  Thank you all.

17          **MR. STOEBERL:**  Thank you, Your Honor.

18           **(The proceedings concluded at 11:55 a.m.)**

19

20

21

22

23

24

25

CERTIFICATE


I, Carla M. Klaustermeier, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 52 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 6th day of March, 2023.



/s/ Carla M. Klaustermeier
Carla M. Klaustermeier, RMR, CCR, CSR, CRR
Official Court Reporter